Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| WEST COAST CAPITAL, LLC<br><br>Parte Recurrida<br><br>V.<br><br>JOSE JUAN ÁLVAREZ MASSINI<br><br>FIDEICOMISO ÁLVAREZ AGRAIT REP POR JOSÉ JUAN, ROSA MARÍA Y GRISELLE MARÍA ÁLVAREZ AGRAIT<br><br>Parte Peticionaria | TA2026AP00195 | *Apelación,* ***acogido como CERTIORARI*** procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm. ISCI201300113<br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Jueza Lotti Rodríguez

*Grana Martínez, Jueza Ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 6 de abril de 2026.

Comparece el Fideicomiso Álvarez Agrait, representado por sus fiduciarios José Juan Álvarez Agrait, Rosa María Álvarez Agrait y Griselle María Álvarez Agrait, (en adelante, parte peticionaria), mediante recurso de *certiorari* presentado el 23 de febrero de 2026, en el cual nos solicita que dejemos sin efecto la *Resolución* emitida por el Tribunal de Primera Instancia, Sala de Mayagüez (TPI o foro primario) el 14 de enero de 2026, notificada el 22 de enero de 2026. Mediante el referido dictamen, el foro primario declaró "No Ha Lugar" la *Moción de Intervención Urgente Solicitando Relevo de Orden al Amparo de la Regla 49.2 de las de Procedimiento Civil Presentada por el Fideicomiso Álvarez Agrait* y mantuvo la subasta judicial celebrada el 13 de mayo de 2025, incluyendo la adjudicación del inmueble a favor de West Coast Capital, LLC (en adelante, parte recurrida).

Por los fundamentos que proceden a continuación, se deniega el recurso de *certiorari.*

**I.**

El 29 de enero de 2013, el Banco Popular de Puerto Rico presentó una *Demanda* de cobro de dinero contra José J. Álvarez Massini, su esposa Rosa María Agrait Muñiz y la sociedad legal de bienes gananciales compuesta por ambos (en adelante, parte demandada), mediante la cual alegó el incumplimiento de una facilidad de crédito, evidenciada por un pagaré otorgado el 9 de junio de 2008 por la suma principal de $1,500,000.00.[1] Sostuvo que dicho pagaré fue objeto de varias enmiendas en cuanto a la tasa de interés y su vencimiento, quedando finalmente vencido el 31 de marzo de 2012, y que, como consecuencia del incumplimiento de la parte demandada, al momento de la presentación de la *Demanda* se adeudaba la suma de $981,018.18 en principal, más $51,099.29 en intereses acumulados hasta el 25 de enero de 2013, los cuales continúan acumulándose, a razón de $170.31 diarios, además de intereses, recargos, costas y honorarios de abogado.

El 18 de junio de 2013, PR Asset Portfolio 2013-1 International, LLC, presentó una *Moción sobre Sustitución de Parte por Cesión de Interés*, donde informó que, el 25 de marzo de 2013, suscribió con Banco Popular de Puerto Rico un acuerdo de cesión, mediante el cual este último le transfirió la totalidad de su interés, como acreedor, en los préstamos objeto del presente litigio. En virtud de lo anterior, solicitó al foro primario que se sustituyera a Banco Popular de Puerto Rico por PR Asset Portfolio 2013-1 International, LLC, como parte demandante en el presente caso.

Luego de varios trámites procesales, el 19 de agosto de 2013, la parte demandada presentó su *Contestación a la Demanda*, sometiéndose voluntariamente a la jurisdicción del TPI sin necesidad de emplazamiento.[2] En dicho escrito, aceptaron y negaron parcialmente las alegaciones de la *Demanda*, reconociendo la existencia del pagaré objeto de la reclamación,

---

[1] Entrada #1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI).
[2] Entrada #4 de SUMAC TPI.

pero controvirtiendo el balance adeudado, la liquidación de intereses y la exigibilidad de la deuda. Asimismo, plantearon que, de existir deuda vencida, la misma no sería exigible por Banco Popular de Puerto Rico, al haberse cedido el crédito a un tercero.

Más adelante, el 8 de noviembre de 2013, PR Asset Portfolio 2013-1 International, LLC, en sustitución de Banco Popular de Puerto Rico, y en conjunto con la parte demandada, presentaron una *Solicitud Conjunta de Sentencia por las Alegaciones*, mediante la cual solicitaron que se dictara sentencia a favor de la parte demandante por la causa de acción de cobro de dinero.[3] Allí, las partes reconocieron que la deuda está vencida, es líquida y exigible, y que los demandados son solidariamente responsables.

Posteriormente, el 7 de abril de 2014, PR Asset Portfolio 2013-1 International, LLC, presentó una *Solicitud de Ejecución de Sentencia*, mediante la cual informó que el 22 de noviembre de 2013, el TPI dictó sentencia condenando solidariamente a los demandados al pago de $981,018.18 en principal, $111,057.21 en intereses acumulados hasta el 21 de agosto de 2013, más los intereses que continúan acumulándose a razón de $333.82 diarios, sumas que se encuentran vencidas, líquidas y exigibles.[4] En consecuencia, solicitó que se ordenara la ejecución de la sentencia, incluyendo el embargo de cuentas bancarias, instrumentos negociables y cualesquiera bienes muebles o inmuebles pertenecientes a la parte demandada.

Ante ello, el 16 de mayo de 2014, el foro primario dictó una *Orden de Ejecución de Sentencia*, mediante la cual declaró "Con Lugar" la solicitud presentada por PR Asset Portfolio 2013-1 International, LLC y ordenó la ejecución de la sentencia dictada el 22 de noviembre de 2013.[5]

---

[3] Entrada #6 de SUMAC TPI.
[4] Entrada #8 de SUMAC TPI.
[5] Entrada #10 de SUMAC TPI.

En consecuencia, el TPI instruyó a la Secretaría a expedir el correspondiente mandamiento de ejecución de sentencia.[6]

Así las cosas, el 10 de abril de 2017, PR Asset Portfolio 2013-1 International, LLC, presentó una *Moción Solicitando Remedio en Aseguramiento de Sentencia*, mediante la cual informó que, tras dictarse sentencia y resultar infructuosos los esfuerzos de cobro y ejecución previamente autorizados, la parte demandada continuaba en incumplimiento de pago.[7] En vista de ello, solicitó, al amparo de las Reglas 56.3 y 56.4 de Procedimiento Civil la anotación de un embargo y prohibición de enajenar en el Registro de la Propiedad sobre el bien inmueble identificado como la finca núm. 40,1431, ubicada en el Condominio Parque Condado, con el fin de asegurar la efectividad de la sentencia. En respuesta, el 19 de abril de 2017, el foro primario emitió *Orden* mediante la cual le ordenó a este presentar una certificación registral, disponiendo que una vez cumplido con ello procedería a resolver la solicitud.[8]

En cumplimiento, PR Asset Portfolio 2013-1 International, LLC presentó una *Urgente Solicitud de Adjudicación de Moción en Aseguramiento de Sentencia*, mediante la cual informó haber cumplido con la *Orden* del TPI al presentar la certificación registral requerida, de la cual surge que el inmueble objeto del aseguramiento constaba inscrito a nombre de la parte demandada.[9] En consecuencia, solicitó que se declarara "Con Lugar" la *Moción en Aseguramiento de Sentencia* y que se ordenara al Registrador de la Propiedad anotar el embargo y la prohibición de enajenar sobre el bien inmueble descrito. El 11 de septiembre de 2017, este Tribunal dictó una *Orden* concediendo la *Moción de Remedio en Aseguramiento de Sentencia* presentada por PR Asset Portfolio 2013-1

---

[6] Entrada #11 de SUMAC TPI.
[7] Entrada #12 de SUMAC TPI.
[8] Entrada #13 de SUMAC TPI.
[9] Entrada #15 de SUMAC TPI.

International, LLC.[10] En consecuencia, el foro primario ordenó al Registrador de la Propiedad, Sección I de San Juan, anotar un embargo y un aviso de prohibición de enajenar a favor de PR Asset Portfolio 2013-1 International, LLC.

Después, el 9 de julio de 2024, West Coast Capital LLC presentó una *Solicitud de Sustitución de Parte,* mediante la cual informó haber adquirido la totalidad del interés de PR Asset Portfolio 2013-1 International, LLC en las facilidades de crédito objeto del presente litigio, quedando subrogada en todos los derechos de esta frente a las partes demandadas.[11] Alegó que, como resultado de dicha cesión, se convirtió en la titular activa del derecho de crédito, por lo que, solicitó su sustitución como parte demandante conforme a la Regla 22.3 de Procedimiento Civil. El 19 de julio de 2024, el foro primario emitió Resolución y Orden, sustituyendo la parte demandante PR Asset Portfolio 2023-1 International LLC por West Coast Capital, LLC.[12]

Más adelante, el 9 de enero de 2025, West Coast Capital, LLC presentó una *Solicitud de Ejecución de Embargo y Solicitud de Orden y Mandamiento de Venta Judicial,* mediante la cual informó que, como parte del trámite de ejecución de la sentencia dictada en el caso, previamente se habían realizado gestiones de aseguramiento y anotación de embargo sobre un bien inmueble perteneciente a la parte demandada.[13] Por tal razón, solicitó que se ordenara la venta en pública subasta del inmueble embargado, descrito como un apartamento residencial ubicado en el Condominio Parque Condado, para aplicar el producto de la venta al pago total o parcial de la deuda adjudicada en sentencia.

Así pues, el 22 de enero de 2025, el foro primario dictó una *Orden de Ejecución de Embargo y de Venta Judicial,* mediante la cual declaró "Ha

---

[10] Entrada #16 de SUMAC TPI.
[11] Entrada #17 de SUMAC TPI.
[12] Entrada #18 de SUMAC TPI.
[13] Entrada #19 de SUMAC TPI.

Lugar" la solicitud presentada por la parte demandante, al constar que la sentencia dictada en el caso es final y firme. En consecuencia, el Tribunal ordenó al secretario expedir el correspondiente mandamiento de venta judicial en ejecución de sentencia dirigido al Alguacil, para que procediera a vender en pública subasta.[14] Acto seguido, el 9 de mayo de 2025, West Coast Capital, LLC presentó *Moción Sometiendo Documentos Complementarios para Celebración de Subasta*, mediante la cual informó al TPI haber cumplido con los requisitos procesales y reglamentarios aplicables.[15]

Posteriormente, el 12 de mayo de 2025, el Fideicomiso Álvarez Agrait presentó una *Moción de Intervención Urgente Solicitando Relevo de Orden al amparo de la Regla 49.2 de Procedimiento Civil*, mediante la cual alegó que, aunque en el presente caso se dictó sentencia exclusivamente contra José J. Álvarez Massini, su esposa Rosa María Agrait Muñiz y la sociedad legal de gananciales compuesta por ambos, durante la fase de ejecución se autorizó erróneamente el embargo y la venta en pública subasta de una finca que no pertenece a la parte demandada, sino al fideicomiso. Sostuvo que la finca núm. 40,143, inscrita al folio 91 del tomo 915 de Santurce Norte, fue adquirida por el Fideicomiso Álvarez Agrait mediante escritura pública otorgada el 17 de agosto de 2007, por lo que no forma parte del patrimonio embargable de los demandados.

En consecuencia, el Fideicomiso Álvarez Agrait solicitó que se dejara sin efecto la *Orden* de subasta, se cancelara la venta señalada y se concediera cualquier otro remedio que en derecho procediera. No obstante, en cumplimiento con el *Mandamiento de Ejecución de Embargo y Venta Judicial,* el Alguacil del TPI procedió a señalar y celebrar la venta en pública subasta del inmueble objeto de ejecución. La subasta se llevó a cabo el 13 de mayo de 2025, conforme al Aviso de Subasta expedido y

---

[14] Entrada #20 de SUMAC TPI.
[15] Entrada #22 de SUMAC TPI.

publicado. Allí, compareció únicamente West Coast Capital, LLC, por conducto de su representante, no compareciendo la parte demandada. No habiendo mejor postor, el Alguacil adjudicó la buena pro del inmueble a West Coast Capital, LLC por la suma de $300,000.00, aplicada en abono a la sentencia, dando por cumplido el mandamiento de ejecución.

Como consecuencia, el 3 de junio de 2025, West Coast Capital, LLC presentó su *Oposición a la Moción de Intervención Urgente* instada por el Fideicomiso Álvarez Agrait.[16] En dicho escrito, la parte recurrida sostuvo que el 22 de enero de 2025 el TPI dictó una *Orden* de ejecución de embargo y de venta judicial respecto a la finca núm. 40,143, y que el correspondiente mandamiento de ejecución fue expedido el 6 de febrero de 2025. Alegó que, previo a la subasta, realizó un estudio de título emitido el 27 de marzo de 2025, el cual reflejaba que los titulares registrales de la propiedad eran los demandados, por lo que procedió a notificar el aviso de subasta conforme a la Regla 51. 7 de Procedimiento Civil, tanto a estos como a su representante legal.

Además, este argumentó que actuó de buena fe y conforme al principio de fe pública registral, al confiar en el contenido del Registro de la Propiedad y en la información provista por el CRIM, los cuales identificaban a los demandados como titulares del inmueble. Sostuvo que la escritura invocada por el Fideicomiso Álvarez Agrait no constaba inscrita ni presentada en el Registro, por lo que no era oponible frente a terceros, y que no se violentó el debido proceso de ley ni procedía el relevo solicitado. En consecuencia, solicitó que se denegara la moción de intervención y se mantuvieran en vigor la orden de ejecución y la subasta celebrada.

Finalmente, el 14 de enero de 2026, el foro primario emitió una *Resolución* en la cual confirmó la *Orden de Ejecución de Embargo y de Venta Judicial* y el *Mandamiento de Ejecución de Embargo y Venta Judicial.*

---

[16] Entrada #25 de SUMAC TPI.

Por tanto, mantuvo la subasta judicial celebrada el 13 de mayo de 2025, incluyendo la adjudicación del inmueble a favor de West Coast Capital, LLC.

Inconforme con el proceder del foro primario, el Fideicomiso Álvarez Agrait acudió ante este Tribunal mediante recurso de *Certiorari* y señala los siguientes errores:

> PRIMER SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR EL RELEVO DE LA ORDEN DE VENTA JUDICIAL POR SUBASTA Y POSTERIORMENTE CONFIRMAR LA ADJUDICACIÓN DE LA SUBASTA A LA RECURRIDA RECONOCIÉNDOLE A ESTA PROTECCIÓN COMO TERCERO REGISTRAL A PESAR DE CARECER DE BUENA FE POR CONOCER DE INEXACTITUD REGISTRAL PREVIO A LA SUBASTA Y DE NO HABER DEMOSTRADO QUE INSCRIBIÓ SU TÍTULO.

> SEGUNDO SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR EL RELEVO DE LA ORDEN DE VENTA JUDICIAL POR SUBASTA Y POSTERIORMENTE CONFIRMAR LA ADJUDICACIÓN DE LA SUBASTA A FAVOR DE LA RECURRIDA A PESAR DE QUE NO SE OBSERVARON LAS GARANTÍAS MÍNIMAS DEL DEBIDO PROCESO DE LEY.

> TERCER SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR EL RELEVO DE LA ORDEN DE VENTA JUDICIAL POR SUBASTA Y POSTERIORMENTE CONFIRMAR LA ADJUDICACIÓN DE LA SUBASTA A FAVOR DE LA RECURRIDA A PESAR DE QUE ESTA NO EVIDENCIÓ CUMPLIMIENTO CON TODOS LOS REQUISITOS ESTABLECIDOS EN LA REGLA 51.7(A) DE PROCEDIMIENTO CIVIL.

> CUARTO SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ORDENAR EL LANZAMIENTO DEL POSEEDOR DEL INMUEBLE EN CUESTIÓN A PESAR DE QUE ESTE NO FUE PARTE DEL PROCESO DE VENTA JUDICIAL POR SUBASTA Y HA CUESTIONADO LA VALIDEZ DE DICHO PROCESO.

Por su parte, el 6 de marzo de 2026, la parte recurrida presentó su oposición al recurso de *certiorari.*

## II.

### A. *Certiorari*

El Tribunal Supremo de Puerto Rico estableció los criterios para la expedición de un certiorari en *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). El *certiorari* es mecanismo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. La opinión ratifica los previamente expresado en *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021);

*McNeill Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2012); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020). La característica principal del *Certiorari* es la discreción que tiene el tribunal para atenderlo. La discreción ha sido definida reiteradamente como una forma de razonabilidad aplicada al discernimiento judicial. Su ejercicio persigue el objetivo de llegar a una conclusión justiciera. *Rivera et al. v. Arcos Dorados et al.,* supra pág. 210.

Por encontrarnos ante un trámite post sentencia el Tribunal de Apelaciones ejerce su discreción conforme la Regla 40 Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas.*, Reglamento TA, 2025 TSPR 42, 215 DPR ___ (2025), la cual establece los criterios que debería considerar para determinar si procede la expedición de un auto de *Certiorari.* El texto de la regla citada es el siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de Certiorari o de una orden de mostrar causa:
>
> A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B) Si la situación de los hechos planteada es la más indicada para analizar el problema.
>
> C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

### B. Relevo de Sentencia

La Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, establece el mecanismo procesal que se tiene disponible para solicitar al foro primario el relevo de los efectos de una sentencia cuando esté presente alguno de los fundamentos allí expuestos. *García Colón et al. v. Sucn. González,* 178

DPR 527, 539 (2009); *De Jesús Viñas v. González Lugo,* 170 DPR 499, 513 (2007); *Náter v. Ramos,* 162 DPR 616, 624 (2004). En lo pertinente, la Regla 49.2 de Procedimiento Civil, *supra,* dispone:

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
>
> > (a) error, inadvertencia, sorpresa o negligencia excusable;
> >
> > (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
> >
> > (c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;
> >
> > (d) nulidad de la sentencia;
> >
> > (e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o
> >
> > (f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.
>
> Las disposiciones de esta regla no aplicarán a las sentencias dictadas en pleitos de divorcio, a menos que la moción se funde en las razones (c) o (d). La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento. Una moción bajo esta Regla 49.2 no afectará la finalidad de una sentencia ni suspenderá sus efectos. Esta regla no limita el poder del tribunal para:
>
> > (1) conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento;
> >
> > (2) conceder un remedio a una parte que en realidad no haya sido emplazada, y
> >
> > (3) dejar sin efecto una sentencia por motivo de fraude al tribunal. Mientras esté pendiente una apelación o un recurso de certiorari de una resolución final en procedimiento de jurisdicción voluntaria, el tribunal apelado no podrá conceder ningún remedio bajo esta regla, a menos que sea con el permiso del tribunal de apelación. Una vez que el tribunal de apelación dicte sentencia, no podrá concederse ningún remedio bajo esta regla que sea incompatible con el mandato, a menos que se obtenga previamente permiso para ello del tribunal de apelación. En ambos casos, la moción de relevo deberá siempre presentarse ante el tribunal apelado dentro del término antes señalado, y si éste determina que estaría dispuesto a conceder el remedio, se acudirá entonces ante el tribunal de apelación para solicitar el referido permiso.

Esta regla es un mecanismo post-sentencia para impedir que los tecnicismos y sofisticaciones frustren los fines de la justicia. *García Colón et al. v. Sucn. González, supra,* pág. 539. El remedio provisto permite al tribunal hacer un balance entre dos intereses en conflicto. Por un lado, está el interés de que toda litigación concluya y tenga finalidad. Por otra parte, está el interés de que en todo caso se haga justicia. Íd., pág. 540. Cabe resaltar que los tribunales tienen discreción para conceder o no el relevo de una sentencia, salvo en los casos de nulidad o cuando la sentencia ha sido satisfecha. *Pérez Ríos et al. v. CPE,* 213 DPR 203, 215 (2023); *Náter v. Ramos, supra,* pág. 624; *Rivera v. Algarín,* 159 DPR 482, 490 (2003).

La antes citada regla debe interpretarse liberalmente. Ahora bien, no es una llave maestra para reabrir controversias, ni sustituye los recursos de apelación o reconsideración. *García Colón et al v. Sucn. González, supra,* pág. 541; *Olmeda Nazario v. Sueiro Jiménez,* 123 DPR 294, 299 (1989). Precisa puntualizar que, al examinar una solicitud de relevo de sentencia, el/la juez(a) deberá estar atento al tiempo que media entre la sentencia y la solicitud de relevo, el perjuicio que sufriría la parte contraria si se concede el relevo de sentencia y el perjuicio que sufriría la promovente de no ser concedido el remedio solicitado. Aunque la Regla 49.2 de Procedimiento Civil, *supra,* debe ser interpretada de forma liberal, el interés de que los pleitos se vean en los méritos no puede bajo toda circunstancia prevalecer sobre los intereses, igualmente justos, de evitar la congestión en los calendarios, de que los casos se resuelvan con prontitud, se termine la incertidumbre y se eviten las demoras innecesarias en el trámite judicial, promoviendo la solución justa, rápida y económica de las controversias *Pardo v. Sucn. Stella,* 145 DPR 816, 825-826 (1998).

Por otro lado, la misma Regla 49.2 de Procedimiento Civil, *supra,* faculta a los tribunales a relevar a una parte de los efectos de una

sentencia, cuando se determina su nulidad. Una sentencia es nula cuando se dictó sin jurisdicción sobre la persona o sobre la materia. Igualmente, cuando se ha quebrantado el debido proceso de ley de una parte, como lo sería una sentencia dictada sin haberse acumulado una parte indispensable. *SLG Rivera-Perez v. SLG Díaz-Doe et al*, 207 DPR 636, 657 (2021); *García Colón et al. v. Sucn. González, supra,* págs. 543-544. Cuando la sentencia es nula, no hay margen para la discreción y tiene que ser dejada sin efecto, independientemente de los méritos de la defensa o reclamación del perjudicado. Una sentencia nula no está sujeta al término de seis (6) meses establecidos en la Regla 49.2 de Procedimiento Civil, *supra. García Colón et al. v. Sucn. González, supra,* págs. 543-544.

### C. Fe Pública Registral

Nuestro ordenamiento jurídico inmobiliario reconoce el Principio de Fe Pública Registral o Publicidad Material. *Medina y otros v. Medina Garay*, 170 DPR 135, 142 (2007); *Banco de Santander v. Rosario Cirino*, 126 DPR 591, 601 (1990). Existe una presunción de que los derechos publicados en el Registro de la Propiedad pertenecen a su titular, así como la posesión del inmueble. 30 LPRA sec. 6049.

Por otro parte, la figura del tercero registral tiene como principal objetivo el proteger a quien de buena fe y a título oneroso adquiera válidamente algún derecho de persona que en el Registro aparezca con facultad para transmitirlo. *Banco Santander v. Rosario Cirino, supra,* pág. 602. Se considera tercero registral a quien adquiera un derecho real confiando en las constancias del Registro de la Propiedad. *Medina y otros v. Medina Garay, supra,* pág. 142. Es decir, esta figura busca proteger a todos aquellos que hayan confiado en las constancias del Registro de la Propiedad al adquirir un derecho real, siempre y cuando cumplan con los requisitos establecidos por ley. *Banco Santander v. Rosario Cirino, supra,* pág. 608. La razón por la cual se le da una protección excepcional es porque se trata de una persona que confió en esa constancia, adquirió de

la persona que consta en el Registro de la Propiedad y cumplió con todos los demás requisitos. Íd. Siendo ello así, este tercero está protegido por el Registro, sin importar cuál es la verdadera situación extrarregistral. Íd.

Ahora bien, todas esas presunciones del tercero registral admiten prueba en contrario. 30 LPRA sec. 6049. En esa línea, la fe pública protege a todos aquellos que reúnan las condiciones para ser considerados terceros registrales, siempre y cuando cumpla con los siguientes requisitos: (1) el derecho sea adquirido válidamente y con arreglo a la ley en un negocio intervivos; (2) de buena fe; (3) a título oneroso de la persona que en el Registro aparece con facultad para transmitirlo; (4) y que haya sido inscrito. 30 LPRA sec. 6050. La buena fe del tercero solo procede cuando haya actuado con una mínima dosis de diligencia y mientras no se pruebe que al adquirir conocía la falta de exactitud del Registro. Íd.

### D. Regla 57.1(a) de Procedimiento Civil

La Regla 57.1(a) de Procedimiento Civil, *supra,* dispone las condiciones en que se debe realizar el aviso de una venta judicial. Puesto a que, si el aviso de venta no se realiza conforme los requisitos establecidos en la aludida regla, esta acarrea la nulidad de la venta judicial. En particular, la Regla 51.7(a) de Procedimiento Civil, *supra,* establece lo siguiente:

> Antes de verificarse la venta de los bienes objeto de la ejecución, ésta deberá darse a la publicidad por espacio de dos (2) semanas mediante avisos por escrito visiblemente colocados en tres (3) sitios públicos del municipio en que ha de celebrarse dicha venta, tales como la alcaldía, el tribunal y la colecturía.
> Dicho aviso será publicado, además, mediante edictos dos (2) veces en un diario de circulación general en el Estado Libre Asociado de Puerto Rico, y por espacio de dos (2) semanas consecutivas, con un intervalo de por lo menos siete días entre ambas publicaciones. Copia del aviso será enviada al deudor o deudora por sentencia y a su abogado o abogada vía correo certificado con acuse dentro de los primeros cinco (5) días de publicado el primer edicto, siempre que haya comparecido al pleito. Si el deudor o la deudora por sentencia no comparece al pleito, la notificación será enviada vía correo certificado con acuse a la última dirección conocida.
> En todos los casos en que se plantee que la parte promovente de un procedimiento de ejecución de sentencia no ha cumplido con alguno de los requisitos de esta regla, el tribunal, a solicitud de parte, celebrará una vista para resolver la controversia planteada. El aviso de venta describirá adecuadamente los bienes que se

venderán y hará referencia sucintamente, además, a la sentencia que se satisfará mediante dicha venta, con expresión del sitio, el día y la hora en que se celebrará la venta. Si los bienes son susceptibles de deterioro, el tribunal, a solicitud de parte, podrá reducir el término de publicación del aviso a menos de dos (2) semanas. **Será nula toda venta judicial que se realice sin cumplir con el aviso de venta en la forma indicada, sin perjuicio de la responsabilidad de la parte que promueva la venta sin cumplir con tal aviso**. (Énfasis nuestro).

### III.

El Fideicomiso Álvarez Agrait solicita que pasemos juicio sobre el relevo de una orden de venta judicial por subasta que el foro primario denegó, confirmando la adjudicación de la subasta a favor de la parte recurrida.

Este Tribunal evaluó el recurso de acuerdo con los límites establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones y la normativa aplicable. Conforme, resolvemos que la parte peticionaria no ha demostrado la existencia de ninguna de las circunstancias que justifican la expedición de un recurso de *certiorari*. Así pues, no existe razón alguna para intervenir con la *Resolución* del TPI.

### IV.

Por los fundamentos antes expuestos, se deniega la expedición del recurso.

Lo acordó y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones